UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| In re | Case No. 11-02924 |
|---|---|
| RUSSELL JACK GRISHAM, | Chapter 13 |
| Debtor. | Re: Docket No. 45 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON
MOTION FOR SANCTIONS FOR AUTOMATIC STAY VIOLATIONS**

On May 4, 2012, the debtor filed a motion for sanctions based on alleged violations of the automatic stay by the Association of Apartment Owners of Ala Wai Mansion ("AOAO"). The parties submitted all evidence in writing, and both parties declined to cross examine any witnesses. Final argument was held on January 29, 2013. At final argument, Dexter Kaiama appeared on behalf of the debtor (for purposes of the final argument only), and Carlos Perez-Mesa and Anna Valiente appeared for the AOAO.

Based on the evidence presented, I make the following

**FINDINGS OF FACT**

1. Russell Jack Grisham owns a penthouse apartment in the Ala Wai Mansion condominium. The AOAO owns and operates the common elements of the project and charges the cost of operating the project to the apartment owners.

One electrical meter serves the entire project.  The AOAO pays for all electricity usage and then includes the cost of electricity in its billings to the owners.

     2.     Mr. Grisham has long faced foreclosure.  On September 7, 2011, Mr. Grisham's first mortgagee obtained a decree of foreclosure.  In addition, he had not paid any amounts claimed by the AOAO for about two years, and the AOAO had demanded payment of more than $35,000.

     3.     In an effort to stave off the foreclosure, Mr. Grisham filed a chapter 7 case in 2010, but the mortgagee obtained relief from the stay to resume its foreclosure.  He filed a second chapter 7 case in 2011, but the court dismissed this case because he failed to file the required schedules of assets and liabilities and related documents.

     4.     Mr. Grisham commenced this chapter 13 case on November 8, 2011.  The AOAO had actual notice of Mr. Grisham's chapter 13 filing.

     5.     The AOAO's board was frustrated by Mr. Grisham's failure to pay his share of the common area expenses and other charges, because it meant that he enjoyed electrical service and the use of the common elements for free, at the expense of his fellow apartment owners.  One of the board members, who is an attorney, decided that the AOAO could cut off electrical service to Mr. Grisham's apartment under Bankruptcy Code § 366.  With the board's unanimous approval,

U.S. Bankruptcy Court - Hawaii   #11-02924   Dkt # 183   Filed  02/04/13   Page 2 of 11

the AOAO deliberately cut off the electrical service to Mr. Grisham's apartment on May 1, 2012.

6. Mr. Grisham demanded that the AOAO restore the electrical service, but the AOAO refused. On May 4, 2012, Mr. Grisham filed an emergency motion asking the court to enforce the automatic stay by requiring the AOAO to restore the electrical service and to impose sanctions on the AOAO. In response, the AOAO argued that it is a "utility" within the meaning of section 366 and that it was entitled to cut off the power because Mr. Grisham had not provided adequate assurance of payment for post-petition electrical service.

7. The motion was heard on May 10, 2012. I told the AOAO that I thought it is not a "utility" within the meaning of section 366 and that the AOAO had violated the automatic stay. I said that relief from the stay might be warranted but that self-help is not permitted. Because the AOAO requested an opportunity for futher briefing and the matter was heard on very short notice, I continued the matter to May 29.

8. On May 29, 2012, I ruled definitively that the AOAO is not a "utility." The AOAO's counsel asked if I was ordering the AOAO to restore the electricity, but I declined to do so on the ground that the automatic stay already required the AOAO to do so. I established a schedule for further proceedings to

3

establish the remedy for the violation.

9.  On May 30, 2012, the AOAO restored the electrical service to Mr. Grisham's apartment.

10. Mr. Grisham has established, by a preponderance of the evidence and with a reasonable degree of certainty, that he suffered the following damages as a direct, proximate, and foreseeable result of the AOAO's termination of electrical service to his apartment:

   a.  Cost of food spoiled by loss of power to refrigerator: $550.00.

   b.  Cost of supplies and equipment to cook and provide light in the absence of regular electrical power: $910.00.

   c.  Restaurant meals consumed due to difficulty in cooking without electricity: $630.00.

11. Mr. Grisham claims that he lost substantial income from actual and potential tenants of rooms in his apartment who terminated their agreements with him due to the AOAO's stay violation. Mr. Grisham has failed to prove most of this claim with the requisite degree of certainty.

   a.  Angela Kneale was renting a portion of the apartment from Mr. Grisham for $850 per month when the AOAO cut the power. She filed an action in the state district court for an injunction requiring Mr. Grisham to restore the

U.S. Bankruptcy Court - Hawaii    #11-02924    Dkt # 183    Filed  02/04/13    Page 4 of 11

power. The district court did not grant the request because of the automatic stay of actions against Mr. Grisham. She did not immediately move out of the apartment because she could not find another place to live. Eventually, she terminated her lease and moved out. I find that the AOAO's disconnection of the power caused Mr. Grisham to lose $850 of rent from Ms. Kneale for May 2012. Because her lease was month to month, she and Mr. Grisham each had the right to terminate it for any reason or no reason on 45 days notice. Therefore, one cannot determine without speculation whether and for how long Ms. Kneale would have remained in the apartment after May 2012, and how much rent she would have paid, had the AOAO not cut the power.

   b. Mr. Grisham entered into an agreement with Mr. and Mrs. Bill Espinosa, dated April 24, 2012, pursuant to which Mr. and Mrs. Espinosa agreed to rent two bedrooms and one bathroom in the apartment for a five year term at $2,000 per month. Mr. Grisham and the Espinosas testified that the Espinosas terminated the agreement after the AOAO cut the power; the Espinosas did not want to live in a condominium run by a board which they perceived as tyrannical. The amount of rent that the Espinosas would have paid to Mr. Grisham is speculative. It is hard to understand how he could have rented two bedrooms to the Espinosas since there are only three bedrooms in the apartment and Mr.

5

Grisham, his ex-wife, his son, and one tenant (Ms. Kneale) were already living there. Further, the first mortgagee had already obtained a decree of foreclosure; it is impossible to say with any degree of certainty how long Mr. Grisham would have been able to rent rooms to anyone.

      c.    Mr. Grisham entered into an agreement with Sherry Parkinson pursuant to which Ms. Parkinson agreed to rent two rooms in the apartment for a six month period commencing on May 15, 2012, at $2,000 per month. Mr. Grisham and Ms. Parkinson agreed to delay the commencement to June 15, 2012, because the AOAO had cut the power, provided that Mr. Grisham paid $1,200 of moving expenses for Ms. Parkinson. (There is no evidence that Mr. Grisham actually paid this amount.) Ms. Parkinson moved into temporary accommodations while waiting for the power to be restored. Once she was settled in to the new place, she decided to stay there and cancelled her agreement with Mr. Grisham. As in the case of the Espinosas, Mr. Grisham has failed to prove the amount of any damages he suffered on account of the Parkinson agreement with the requisite certainty.

    12.    Mr. Grisham seeks to recover for his time spent and out of pocket expenses incurred (for supplies, parking, postage, temporary office rental, and the like) in attempting to require the AOAO to restore the power, in the total amount

6

U.S. Bankruptcy Court - Hawaii   #11-02924   Dkt # 183   Filed 02/04/13   Page 6 of 11

of $13,125.00. Mr. Grisham has failed to establish his lost income and the value of his time with sufficient certainty. I will also deny this request for the legal reasons explained below.

13. Mr. Grisham claims that the AOAO's conduct caused him to suffer emotional distress. Mr. Grisham offered uncontroverted testimony about the stress which he suffered while the power was cut, to the point that he began to suffer rectal bleeding.

    a. Mr. Grisham has clearly established that he suffered significant emotional distress as a direct result of the AOAO's disconnection of the power. Living in a modern high-rise apartment for weeks without electrical service would distress any reasonable person.

    b. The power cut was not the only source of emotional trauma in Mr. Grisham's life. He was facing foreclosure on his home and had filed three bankruptcy cases in an attempt to avoid that result. Some time earlier, his long-divorced ex-wife asked if she and their son could move into the apartment while she underwent chemotherapy treatments for cancer. Mr. Grisham generously agreed, despite the fact that he and his ex-wife had an acrimonious relationship. Their son's testimony eloquently describes how miserable they made each other while living together. The disconnection of electrical service made the situation

7

U.S. Bankruptcy Court - Hawaii   #11-02924   Dkt # 183   Filed  02/04/13   Page 7 of 11

worse, but the situation was terrible to begin with due to circumstances for which the AOAO is not responsible.

  c. Based on all of the evidence, I find that the AOAO's disconnection of the power caused Mr. Grisham to suffer emotional distress damages in the amount of $2,000.00.

  14. From May 1 (when the AOAO first disconnected the power) until May 10 (when the first hearing on Mr. Grisham's motion was held), the AOAO's conduct was not so egregious as to warrant punitive damages. During that period, the AOAO believed that it had the legal right to terminate the power service. On May 10, however, I told the AOAO's counsel that I did not agree with that theory and that the AOAO was proceeding at its own risk. The AOAO chose to ignore that warning, and instead repeated the same arguments which I had considered and rejected at the first hearing. I find that the AOAO's conduct after May 10 was sufficiently egregious and wanton to warrant an award of punitive damages in the amount of $4,000.00. This amount is appropriate and proportional to the AOAO's misconduct; it is slightly less than two months common area charges and other fees which Mr. Grisham owes to the AOAO.

  Based on the foregoing findings of fact, I make the following

8

U.S. Bankruptcy Court - Hawaii #11-02924 Dkt # 183 Filed 02/04/13 Page 8 of 11

## CONCLUSIONS OF LAW:

1. The court has jurisdiction of the parties and the subject matter. The bankruptcy court has statutory and constitutional power to enter a final judgment in this matter.

2. The AOAO is not a "utility" within the meaning of Bankruptcy Code § 366.

3. The AOAO violated the automatic stay of Bankruptcy Code § 362 when it cut off electrical service to Mr. Grisham as a result of his failure to pay pre- and postpetition amounts owed to the AOAO.

4. If a creditor "willfully" violates the automatic stay, an individual debtor "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). The debtor bears the burden of proving that the creditor's actions were willful. Eskanos & Adler, P.C. v. Roman (In re Roman), 283 B.R. 1, 7–8 (B.A.P. 9th Cir. 2002). To be "willful", the creditor must know of the automatic stay, and its actions that violate the stay must be intentional. Ozenne v. Bendon (In re Ozenne), 337 B.R. 214, 220 (B.A.P. 9th Cir. 2006) (citing In re Peralta, 317 B.R. 381, 389 (B.A.P. 9th Cir. 2004)).

5. The AOAO's violation was wilful. I have found that it had actual

U.S. Bankruptcy Court - Hawaii   #11-02924   Dkt # 183   Filed 02/04/13   Page 9 of 11

notice of Mr. Grisham's bankruptcy filing and that it acted deliberately.

      6.     Mr. Grisham bears the burden of proving, by a preponderance of the evidence, that he suffered damages as a result of the stay violations. <u>Dawson v. Washington Mut. Bank, F.A.</u> (<u>In re Dawson</u>), 390 F.3d 1139, 1149 (9th Cir. 2004); <u>Goichman v. Bloom</u> (<u>In re Bloom</u>), 875 F.2d 224, 227–28 (9th Cir. 1989). A debtor must support a claim for actual damages with reasonable certainty; a claim cannot be speculative or based upon conjecture. <u>See</u> <u>In re Heghmann</u>, 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004) ("[A]ctual damages should be awarded only if there is concrete evidence supporting the award of a definite amount.").

      7.     As set forth in the findings of fact, Mr. Grisham has proved some, but not all, of his claimed damages with the requisite degree of certainty and definiteness.

      8.     An unrepresented party is not entitled to claim damages for time spent on the litigation, because this would be the equivalent of awarding an attorneys' fee to a nonattorney. <u>Gonzalez v. Kangas</u>, 814 F.2d 1411, 1412 (9th Cir. 1987). Mr. Grisham's claim for his time and expenses incurred in litigating with the AOAO is therefore not allowable.

      9.     To recover damages for emotional distress, Mr. Grisham must: (1) demonstrate that he suffered significant harm, (2) clearly establish the

U.S. Bankruptcy Court - Hawaii   #11-02924   Dkt # 183   Filed 02/04/13   Page 10 of 11

significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay. In re Dawson, 390 F.3d at 1149.

10. Mr. Grisham has proven that he clearly suffered significant emotional harm as a direct result of the AOAO's violation of the automatic stay, and that the appropriate amount of damages is $2,000.00.

11. Punitive damages are only awarded "in appropriate circumstances." 11 U.S.C. § 362(k)(1). Punitive damages for violation of the automatic stay are limited to situations where a creditor engaged in "egregious, intentional misconduct." McHenry v. Key Bank (In re McHenry), 179 B.R. 165, 168 (B.A.P. 9th Cir. 1995); see also In re Bloom, 875 F.2d at 224 (9th Cir. 1989) (observing that the court has "traditionally been reluctant to grant punitive damages absent some showing of reckless or callous disregard for the law or rights of others.").

12. As set forth in the findings of fact, Mr. Grisham has shown that a portion of the AOAO's conduct was egregious and intentional and displayed callous disregard for his legal rights.

\* \* \*

The court will enter a separate final judgment in favor of Mr. Grisham and against the AOAO in the amount of $8,940.00.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 02/04/2013

11

U.S. Bankruptcy Court - Hawaii   #11-02924   Dkt # 183   Filed 02/04/13   Page 11 of 11